In the District Court of the United States
For The District of South Carolina

BEAUFORT DIVISION

| | | |
|---|---|---|
| Robert Lewis Griffin, #210781, ) | Civil Action No. 9:07-1609-JFA-GCK |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Jason Catoe, Larry Neely, and ) | |
| Paul Smith, ) | |
| Defendants. ) | |

## I. INTRODUCTION

The Plaintiff, Robert Lewis Griffin ("Plaintiff" or "Griffin"), filed this action against Jason Catoe, Larry Neely, and Paul Smith (collectively, the "Defendants"), all with the Lancaster Municipal Justice Center. Plaintiff alleges that during the course of his arrest on July 6, 2004, he was subjected to excessive force by the Defendants in violation of 42 U.S.C. § 1983.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court. The Defendants have filed a motion for summary judgment. [46] As this is a dispositive motion, the Report and Recommendation is entered for review by the District Court.

---

[1] 42 U.S.C. §1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner,* 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

## III. FACTUAL BACKGROUND

The facts, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

Plaintiff states in his verified Complaint[2] [1] that on July 6, 2004, he was involved in a physical altercation with another individual and was not aware of the police presence. He was still

---

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

swinging at the other individual when he felt a shock go through his body and then realized he was being handcuffed. While he was being handcuffed, the person with whom he had been fighting hit him on the back with a shovel. At the same time Plaintiff was struck with the shovel, another Officer approached him and put a taser gun to the left side of his head, above the ear, and pulled the trigger. Plaintiff dropped to his knees, then someone threw Plaintiff to the ground from his kneeling position. While Plaintiff was on the ground, he tried to shake off the pain in his head by turning his head from side to side; an Officer either had a knee in Plaintiff's back or was sitting on him and pushing Plaintiff's face into the road. EMS was called in to remove the prongs from Plaintiff's head and Plaintiff was placed in the back of a patrol car. Plaintiff complained that his back was hurting. and he was taken to a hospital. He complained of back pain while there but the staff did not check his back and was only given two Motrin. He was then transported to the Lancaster Police Department where he was charged with assault and battery and disorderly conduct.

Plaintiff was released the next day and he returned to the hospital for pain in his back. A nurse examined him, saw a bruise, and gave him prescriptions for pain medication and a muscle relaxer. Plaintiff went home, called the police station, and spoke to Captain Scott Grant about the incident, who denied it had happened. Plaintiff seeks money damages for the use of excessive force.

The Defendants state that on July 6, 2004, the Plaintiff was arrested by the Defendants after the Defendants observed the Plaintiff fighting in the street with several individuals. *See*, Affidavits of Smith, Neely, and Catoe. During the course of the arrest, the Plaintiff broke free from one of the Defendants and continued his attack of the other individual, even though the other individual was now restrained and lying on the ground. *Id*. The Plaintiff ignored several verbal commands given to him by the Defendants to stop his attack, and eventually one of the Defendants had to use a taser on the Plaintiff to halt his attack and restrain the Plaintiff. *Id*. The Plaintiff

continued to resist the Defendants' efforts to restrain him, until he was finally handcuffed and escorted from the scene. *Id*. Prior to leaving the scene of the incident, a first responder examined the Plaintiff and removed the taser probes from the Plaintiff. *Id*. The Plaintiff was then taken to an area hospital where he was examined, and no significant injuries were noted. *Id*.

## IV. PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this action on June 7, 2007, contending that the Defendants had used excessive force against Plaintiff. After the case was brought into proper form, service of process was authorized on August 14, 2007. [20] On October 9, 2007, an Answer was filed on behalf of all the Defendants. [29] After requesting and receiving several extensions of time, the Defendants filed a motion for summary judgment and a supporting Memorandum on December 28, 2007. [46] On January 2, 2008, the undersigned issued an order under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the summary judgment procedure.[3] [48]

On February 4, 2008, Plaintiff filed his response to the motion for summary judgment. [53] On February 14, 2008, the Defendants filed a reply to the Plaintiff's response to the motion for summary judgment. [54]

## V. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an

---

[3] In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se* Plaintiffs must be advised that their failure to file responsive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

> essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "once a Plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 ( 1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI.  DISCUSSION

The court construes Plaintiff's claim as one for excessive force used by the Defendants in violation of Plaintiffs's constitutional rights pursuant to 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).  The question here is whether the Defendants' actions have violated Plaintiff's rights under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment.  More specifically, the issue is whether the use of a taser to facilitate Plaintiff's arrest constitutes the use of excessive force under the circumstances at hand.

> In *Yarborough v. Montgomery*, 554 F.Supp.2d 611 (D.S.C. 2008), the court explained:
>
> " [A]ll claims that law enforcement officials have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."  *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  *See also Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir.1997) (en banc) (the Fourth Amendment "governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person.").  The Fourth Amendment test is "an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.  The test of reasonableness is "not capable of precise definition or mechanical application."  *Id.* at 396, 109 S.Ct. 1865.  In determining the reasonableness of the use of force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the importance of the governmental interest alleged to justify the intrusion.  *Id.* (citations omitted).  Courts have "long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citations omitted).  This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders.

*Yarborough*, 554 F.Supp.2d at 617.

The *Graham* case teaches that the reasonable inquiry is fact specific, requiring the examination of several factions, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citations omitted). The Supreme Court explained this reasonableness inquiry by noting that there must be an "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97, 109 S.Ct. 1865.

In *Yarborough*, the District Court upheld the use of a taser in the course of an arrest of a person who had threatened hospital staff, may have been suicidal or otherwise mentally unstable, who had fled from an officer and appeared to be resisting another officer's verbal orders to lie on the ground. 554 F.Supp.2d at 618. The *Yarborough* court quoted with approval the reasoning set forth in *Draper v. Reynolds,* 369 F.3d 1270, 1278 (11th Cir. 2004):

> [I]n balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the importance of the governmental interest alleged to justify the intrusion, the court finds that [the officer's] use of the Taser was reasonably proportionate to the situation he encountered. 'Although being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used-a single use of the taser gun causing a one-time shocking-was reasonably proportionate to the need for force and did not inflict any serious injury.'

*Yarborough*, 554 F.Supp.2d at 619.

Plaintiff alleges that the Defendants used excessive force against him. The Defendants, in turn, argues that the use of force did not violate Plaintiff's constitutional rights as the force used was reasonably necessary, it was justified under the circumstances, and further that to the extent Plaintiff was injured, his injuries were his own fault, as he failed to cooperate with the deputies. The Affidavits of the three Defendants indicate that Plaintiff was fighting with several others in a roadway. Officer Catoe attempted to restrain him, but he broke away and attacked the other individual, who was at that time in handcuffs. Plaintiff ignored several verbal orders by Cpl. Smith to stop fighting, and Cpl. Smith, pursuant to law officer training, and acting in accordance with Lancaster Police Department policy, used his taser to bring the violent Plaintiff under

control. *See* Smith Affidavit. Even after Plaintiff was hit with the taser, he continued to resist Officer Catoe's commands and efforts to restrain him, and exhibited an aggressive demeanor.

The testimony before the Court shows that the Plaintiff was examined by a first responder at the scene of the incident, and that no significant injuries were noted. *See*, Affidavits of Smith, Neely, and Catoe. Additionally, the Plaintiff was taken to an area hospital where he was examined by professional medical care providers. *Id*. The doctor at the hospital did not indicate that he observed any significant injuries to the Plaintiff, and gave the Plaintiff Motrin and Neosporin. *Id*.

In the present case, Plaintiff has failed to show that the Defendants' actions amount to an unconstitutional use of force. This case is no different from *Yarborough*, where the court held that the plaintiff's constitutional rights had not been violated. Indeed, the facts of the case indicate that Plaintiff suffered only very minor injuries as a result of his behavior and the resulting use of force to bring him under control. Indeed, the injuries the Plaintiff has complained of in his Complaint (to the extent they occurred during the arrest, and not during the fight itself) can best be characterized as largely self-inflicted. The Plaintiff admits that he was "turning his head one side to the other," while laying in the street. *See* Complaint, pg. 3. This behavior resulted in the abrasions to the Plaintiff's face that he has now asserted. Additionally, the Plaintiff was actively resisting the Defendants' efforts to restrain him.

It is well-settled that the reasons for a particular use of force are to be judged from the standpoint of a reasonable officer on the scene rather than with the advantage of 20/20 hindsight. It is also well-established that not every push, shove, or use of force by an officer will give rise to a claim for excessive force, even though it may later seem that such conduct was unnecessary. Police officers are required to make split-second judgments in circumstances that are tense, uncertain, and/or fluid, and the law recognizes that the amount of force as may be necessary may vary from one particular situation to another. In claims such as this, the question to be determined is whether or not the conduct of the officer involved was objectively reasonable. If the officer's

conduct is said to be objectively reasonable, then there can and should be no claim for excessive force.  *Graham v. Connor*, 490 U.S. 386 (1989).  The use of force applied on July 6, 2004, with respect to the Plaintiff was reasonable, appropriate, and constitutionally permissible, and it is recommended that the Defendants be granted summary judgment.

### The Defendants are Entitled to Qualified Immunity under Section 1983

As another reason to recommend granting summary judgment to the Defendants, the Defendants are entitled to qualified immunity under Section 1983.  In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States Supreme Court recognized that immunity for government officials exists if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known to exist.  When making a determination on the issue of qualified immunity, a court should determine (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer and/or person that his conduct violated that right.  *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Brown v. Gilmore,* 278 F.3d 362, 367 (4th Cir. 2002).  To be clearly established for purposes of qualified immunity, the contours of the right at issue must be sufficiently clear that a reasonable official would understand that the action he is taking will violate that right.  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

It is also well-settled that qualified immunity protects all but those who are plainly incompetent or those who knowingly violate the law.  *Willingham v. Crooke,* 412 F.3d 553, 559 (4th Cir. 2005); *Malley v. Briggs,* 475 U.S. 335, 341.  Qualified immunity also protects officials from bad guesses in gray areas and insures that they are liable only when they transgress bright lines.  When the law in an area is unsettled, there is no bright line or clear law for a defendant to violate. Entitlement to qualified immunity has been determined to be a question of law for the Court.  *Willingham v. Crooke,* 412 F.3d 553, 559 (4th Cir. 2005).  When there is no disputed issue of fact relevant to the Court's inquiry into qualified immunity, there is no question for the Court to submit to a jury.  In the present case, the Plaintiff has failed to show that the Defendants violated

his established constitutional rights.  Therefore, the Defendants are entitled to qualified immunity in their individual capacities.

## **RECOMMENDATION**

Based upon the foregoing, it is recommended that the Defendants' Motion for Summary Judgment **[46] be granted**.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

August 11, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).